Dayis, J.,
delivered the opinion of the court:
In Herndon’s Case (15 C. Cls. R., 446), decided at the last term, it appeared that Landram, tlie present claimant, an internal-revenue collector, being authorized by the Secretary of the Treasury to employ a deputy at $1,200 a year, appointed Herndon a deputy at that salary; that Herndon was at the same-time acting as distillery surveyor with a per diem pay of $5 while employed, and expenses; and that the Comptroller had refused to allow double pay to Herndon, and had, in. settling Landram’s accounts, deducted from the allowance of $1,200 the sums paid Herndon as distillery surveyor. In that case the court held that there was no privity of contract between Herndon and the United States, and that he could not recover. Landram now brings this suit to recover the same sum, and it is admitted that if he recovers the money will go to Herndon.
The Attorney-General meets the claim here in the present, form, as the Comptroller met it at the Treasury, by setting up the statutes in regard to dual pay. He also puts forward a counter-claim, which, as he disregarded- it in his brief, and virtually abandoned it in his argument, it is unnecessary to consider further.
The traditions and usages of the United States recognize the policy and propriety of employing, when necessary, the same person at the same time in two distinct capacities. Not to mention other familiar cases, there are the prominent examples of the diplomatic mission of Mr. Jay, to England, under President Washington, while he was still Chief Justice of the United States; of the mission of Mr. Gallatin, to London and Peters-burg, to negotiate a peace, while Secretary of the Treasury under President Madison; and of Mr. Justice Nelson sitting as a member of the commission which concluded the treaty of Washington under President Grant.
On the other hand, it is the undoubted aim of general legislation respecting salaries to gauge the work so as to give full employment to the capacities of the man likely to be appointed to do it, and to measure the pay according to the work.
In construing statutes restraining the executive from giving dual or extra compensation, courts have aimed to carry out the legislative intent, by giving them sufficient flexibility not to *83 injure tbe jiublic service and sufficient rigidity to prevent executive abuse.
A portion of the payments to Herndon as distillery surveyor were made prior to the date when the Revised Statutes took effect; the remainder after that time. For the purposes of this opinion we shall treat the Revised Statutes as codifying and containing the previous statutory provisions in this respect, and shall refer only to the codification. •
The provisions in the Revised Statutes are found in sections 1763,1764, and 1765. Section 1763 relates to the discharge of the duties of an office by a person holding another office. In Herndon’s Case we held that, as deputy collector, he was not an employe of the government, for the payment of whose services the United States were liable to him. If not an employé he certainly was not an officer; and therefore Landram is not now seeking compensation for discharging the duties of another office, and section 1763 does not apply to this case.
Section 1764 relates to allowances or compensation to officers or clerks in a department for the discharge of duties belonging to other officers or clerks in a department; also to allowances or compensation to officers or clerks for extra services. Hern-don was not an officer, or a clerk in a department, and therefore the first portion of section 1764 is not applicable. As to the second, it may be inferred from the context that the clerks who are forbidden by this section to receive compensation for extra services are the clerks in the executive departments — that large class of clerks who are specially recognized by statute, and whose compensation and duties are specially marked out. (Rev. Stat., §§ 158-183.) The Revised Statutes contain provisions relating to clerks of courts, to clerks of Congressional committees, to clerks of the House of Representatives, to executive clerks, to Admiral’s clerks, to consular clerks, and to customhouse clerks; but as the work “ clerk” is us9d in section 1764, it is evidently the intent of Congress to confine it to departmental clerks. Neither Landram nor Herndon was a clerk of this class.
The Attorney-General mainly relies upon the provisions of section 1765, which are as follows:
“No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, *84 or compensation in any form whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.”
Landram was undoubtedly an officer in a branch of the public service, with a salary fixed by law. (Rev. Stat., § 3145.) But it is equally true that the extra allowance now in dispute is authorized by. law, and that the provision for such extra allowances (ib.), taken in connection with the appropriation for salaries and expenses of collectors (18 Stat. L., 93, 352), explicitly states that the appropriations are for the extra allowance. This is denied, but on insufficient ground. When. Congress authorized the Secretary of the Treasury to make such allowances from time to time to collectors as might be reasonable or seem just for certain purposes, it parted with its own discretion to fix the amount of the appropriations for those purposes and conferred it upon the Secretary. To hold that after the exercise of the power by the Secretary he had no authority to pay the allowances, for want of a fixed appropriation, would defeat the will of Congress. If, therefore, this claim is to be-treated as Landram’s claim only, and if the Comptroller has no power to go behind the voucher which Landram brings to the Treasury, and to inquire whether hisemployé, who received the money as deputy collector, had a right to receive it in that capacity, it would seem that Landram is entitled to judgment.
This brings us to the real issue in this case, viz, whether Herndon could lawfully take pay for his services in the two capacities. If he could, the Treasury must take his voucher as Landram’s warrant for the payment, and Landram is entitled to recover the sum withheld.
It is to be observed, in the first place, that there is no element of turpitude or concealment or fraud in this case. It is found that Herndon was a good officer, who was employed in the two capacities because of his fitness for each, and that the Commissioner of Internal Eevenue was duly informed of his .appointment in each case when it was made. That officer does not appear to have made any objection to it until the payments allowed and paid to Herndon as distillery surveyor amounted to $990. Even then he did not doubt the propriety of the appointment, but objected only “ because the Comptroller had decided that employés of the government cannot draw pay for two services at the same time.”
*85 Section 1765 of tlie Revised Statutes relates, in tbe first place,, to any officer in any branch of tbe public service. But Herndon was not an officer, and therefore this provision does not affect him. In tbe next place, it relates to any other person-whose salary, pay, or emolument is fixed by law or regulation. Tliis must mean any other person in any branch of the public-service whose salary, pay, or emolument is fixed by law or regulation. If it has not that meaning, then the word other’' has no signification, and is improperly interpolated in the statute.
At the last term of court we held that Herndon, while acting-as deputy collector, was not an employé in a sense to make a privity of contract between him and the government.. But it does not necessarily follow that he was not a person in a branch of the public service. He was empowered with the like authority in every respect to collect the taxes levied or assessed within the portion of the district assigned to him which is by law vested in the collector himself.” (Rev. Stat., § 3148.) Among these powers were the right to summon parties liable to special taxes to produce their books, and to have an attachment in case of failure to obey it (§§ 3173, 3174, 3175); the right to enter the premises of persons who have taxable property and neglect or refuse to make returns (§ 3176); the right to collect taxes and give receipts for the same (§ 3183); the right to levy upon property for the payment of taxes (§ 3188); the right to sell property levied upon (§ 3190), and the right to seize and sell real estate (§3L96). It cannot be maintained that a person charged with such extensive powers was not in public employment, although not employed directly by the United States, and was not in a branch of the public service.
Being in the public service, he was disqualified from receiving dual compensation, if he was receiving in either capacity a pay or emolument fixed by law, or by regulation. There is no-pretense that either pay was fixed by law. „Was either fixed by regulation %
Section 3145 of the Revised Statutes, which confers upon the Secretary of the Treasury the power to make the allowances in question, does not indicate how they are to be made. Section 161 confers upon the heads of departments the general power to make regulations for the government of the departments, not inconsistent with law. Section 251, which empowers the *86 Secretary of the Treasury to issue regulations for the government of collectors, makes a distinction between “instructions” and “ regulations.” This distinction is inherent in the nature of the two things. An instruction is a direction to govern the conduct of the particular officer to whom it is addressed. A regulation affects a class or classes of officers. It was open to the Secretary of the Treasury to prescribe the allowances to collectors or the payment of distillery surveyors in the form of a regulation or in the form of an instruction. In the former case it would have brought them within the terms of section 1765; in the latter case they would have been outside of those terms.
It appears by the findings that the allowances in each case to Herndon, as deputy collector, were specially fixed, and were in fact different at different times. This is inconsistent with the nature of a regulation having the character and force of law.
A somewhat different course was taken in fixing his compensation as distillery surveyor. It appears that during the period between May 1, 1873, and August 31, 1875, a uniform rate for the payment of such services prevailed, viz, $5 per diem, when actually employed, with traveling expenses, for all districts except in three specified cases, of which Landram’s district was not one; that that rate was fixed by the Commissioner for all cases 5 and that it was the uniform habit of the department to notify appointees of their appointment and compensation by a letter, of which a blank form is given in the findings. .
In form this was not a regulation issued by or under authority of the head of a department, and having the'force and effect of law, when not inconsistent with provisions of law; and yet it had practically the same executive operation as a regulation. On examining the statute there appears to have been a reason for adopting this course.
The necessity of surveying a distillery could arise only on the establishment of “a new distillery, or the increase of the capacity of an old one, and when the work was once done it was done forever, as to the subject of tlie particular survey. The work of gauger was a continuing work, so long as the still should be in operation; and so was the work of a collector and of a deputy collector. Hence, while the statute made provision for continuing work and continuing pay in the case of gaugers and collectors *87 and their deputies, it made provision for a special survey in each •case “ on receipt of notice that any person wishes to commence the business of distilling” (17 Stat. L., 239; Bev. Stat., § 3264), and it provided that this was to be done “ at the expense of the United States, with the aid of an assistant designated for the purpose [i. e., for the purpose of each survey] by the Commissioner of Internal Bevenue.” (Ib.) In framing his directions for the execution of this power, the Commissioner may have thought that the most competent, and in other respects, also, the best persons for the purpose of settling the capacity of the still were those who were to be subsequently employed in measuring it or collecting the revenue from it; and he may have purposely shaped his instructions so as, on the one hand, to produce uniformity of pay, and, on the other, to avoid the force of the statute forbidding dual compensation. For he may have reasoned that it would not be just to require a man who received one measure of compensation for the performance of one set of duties to perform other duties of an arduous character without additional pay; and on the other hand he may have found practical difficulties in securing the faithful performance of those other duties by independent parties for the sum he was willing to allow. Whatever may have induced him, the Commissioner issued his directions to distillery surveyors in the form of instructions, and not in the form of regulations, and .thus took those cases out of the technical operation of the provisions codified in section 1765 of the Bevised Statutes.
If this conclusion is correct, it follows that Herndon, having performed the services required of him as distillery surveyor, was entitled to the compensation allowed for them ; and that having performed his duties as deputy collector, he was entitled to the compensation allowed for that; and that there is no provision of law which forbids the dual compensation for the double work. The claimant, Landram, is, therefore, entitled to recover the amount improperly withheld.
The judgment of the court is that the claimant recover the sum of $990, and that the counter-claim be dismissed.
Hunt, J., was absent, by reason of illness, when this case was tried and took no part in the decision.